**COZEN O'CONNOR**
BY:   Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Celgene Corporation,** | |
| Plaintiff, | |
| v. | Civil Action No.: _____ |
| **Centralux Ltd., Ruslan Kipen and DOES 1-10,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT**

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys, for its complaint against Centralux Ltd. ("Centralux"), Ruslan Kipen ("Mr. Kipen"), and DOES 1-10 ("DOES") (collectively the "Centralux Defendants") alleges as follows:

**Parties**

1.     Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2.     Defendant Centralux is an entity with a mailing address at 6 Kolokotroni, 1st Floor, Office 6, Nicosia, Cyprus and an email address of supervisor@salezhelp.com.

3. Defendant Centralux owns and controls multiple websites at www.safemedsrx.com, www.saferxmeds.com, www.helpfultabs.com, and www.healthpillsonline.com (the "Infringing Websites") whereby generic unauthorized and unregulated lenalidomide is improperly advertised, marketed, promoted, offered for sale, and sold into the United States to United States consumers in connection with the marks REVLIMID and REV.

4. Defendant Ruslan Kipen is an individual with an address at Sayanskaya St., Zheleznogorsk, Russia, 662970, and an email address at stmc2mail@gmail.com.

5. Defendant Mr. Kipen is the registrant of record for the SAFEMEDSRX.COM, SAFERXMEDS.COM, HELPFULTABS.COM, and HEALTHPILLSONLINE.COM domains.

6. The true names and capacities, whether individual, corporate, associate, or otherwise of DOES are unknown to Celgene at this time and Celgene therefore sues the DOES under such fictitious names. When the true names, capacities, and activities of the DOES are ascertained, Celgene will amend this Complaint accordingly. Celgene is informed and believes and thereon alleges that all of the Centralux Defendants are responsible in some manner for the events and happenings referred to herein, and that Celgene's damages as alleged herein were proximately caused by the Centralux Defendants.

## Jurisdiction and Venue

7. This action arises under the Acts of Congress under the Trademark and Lanham Acts, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law. A substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district. As such, the Centralux Defendants should reasonably expect that their activities might have consequences herein.

8. This Court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

9. This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

10. The Centralux Defendants are subject to this Court's personal jurisdiction because: (1) they do substantial business in this district via the Infringing Websites; and (2) they regularly solicit business from, do business with, and derive revenue from goods and/or services provided to customers in this district via the interactive Infringing Websites. The most recent shipment of the Revlimid drug into the State of New Jersey occurred via purchase made via the safemedsrx.com website in August of 2017.

11. Venue is proper in this judicial district pursuant to Title 28 U.S.C. §§ 1391 (b) (2) and (c).

## Background as to Celgene's Business and Its Intellectual Property

12. Celgene is a global biopharmaceutical company which is the owner of all proprietary rights in and to the drug REVLIMID®, which is a drug utilized in the treatment of various cancers. The REVLIMID® drug fights abnormal cells in the bone marrow and allows normal cells to perform their functions. The active ingredient in the REVLIMID® drug is called lenalidomide (le-na-lid-oh-mide). The REVLIMID® drug is used by patients with multiple myeloma (mm) and for patients with a condition called del 5q MDS and who require red blood cell transfusions to manage anemia (low red blood cell counts).

13. The REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), subject to restricted distribution, and is currently available in the marketplace in the United States. The FDA has approved the REVLIMID® drug, which is taken orally, for

previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS). In the United States, Celgene's REVLIMID® drug bears the REV® mark on the capsule.

14. Because of the potential toxicity of the REVLIMID® drug, and in an effort to minimize the chance of fetal exposure to this drug, the REVLIMID® drug is approved for marketing only under a special restricted distribution program approved by the FDA. This program is called REVLIMID REMS® in the United States. Under this restricted distribution program, only prescribers and pharmacists registered with the program are allowed to prescribe and dispense the REVLIMID® drug. In addition, patients must be advised of, agree to, and comply with the requirements of the REVLIMID REMS® program in order to receive the REVLIMID® drug.

15. Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 3,255,216 for REVLIMID covering "pharmaceutical preparations for the treatment of certain cancers" in International Class 5;

- U.S. Reg. No. 3,074,309 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 2,925,808 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5; and

- U.S. Reg. No. 3,169,244 for REVLIMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5.

16. Celgene's U.S. Reg. No. 2925808 for REVLIMID, U.S. Reg. No. 3074309 for REVLIMID, U.S. Reg. No. 3169244 for REVLIMID and Design, and U.S. Reg. No. 3255216 for REVLIMID have acquired incontestable status. 15 U.S.C. §1065. Thus, these registrations are conclusive evidence of the validity of the registered marks, of Celgene's ownership of the marks, and of Celgene's exclusive right to use the registered marks in commerce in connection

4

with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

17. Celgene is the owner of the REV® mark in the United States, including the following registration: U.S. Reg. No. 3,212,206 for REV covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5.

18. Celgene's U.S. Reg. No. 3212206 for REV has acquired incontestable status. 15 U.S.C. §1065. Thus, this registration is conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

19. Celgene has expended significant time, energy and resources in the protection and promotion of its REVLIMID® and REV® brands in multiple jurisdictions throughout the world.

20. The effectiveness of the REVLIMID® drug, an immunomodulatory agent, for previously treated patients with multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS), and for patients who require red blood cell transfusions to manage anemia (low red blood cell counts) has delivered results in terms of treatment, and has resulted in significant commercial success.

21. Through Celgene's use of the REVLIMID® and REV® marks in connection with its REVLIMID® drug, the REVLIMID® and REV® marks and REVLIMID® drug have become associated with Celgene in the minds of the public.

22. Celgene's REVLIMID® and REV® marks are strong and are inherently distinctive.

23. Celgene's REVLIMID® and REV® marks are famous and represent the exceedingly valuable goodwill of Celgene.

### Background as to the Centralux Defendants' Unlawful Conduct

24. Centralux and Mr. Kipen, through the Infringing Websites, offer for sale and/or sell generic drugs to consumers throughout the United States and elsewhere throughout the world.

25. The Infringing Websites are active and solicit business throughout the United States. Via the Infringing Websites, Centralux and Mr. Kipen advertise, market, and offer for sale and sell, to consumers throughout the United States, including consumers in the District of New Jersey, a variety of drugs including lenalidomide.

26. The Centralux Defendants utilize, without authorization, the marks REVLIMID and REV in connection with the advertising, marketing, promoting, offering for sale, and sale of purported generic lenalidomide.

27. The Centralux Defendants are not registered or approved pharmacies under the United States restricted distribution program, REVLIMID REMS®.

28. The Centralux Defendants are dispensing lenalidomide to patients who are not registered with Celgene, and, as such, do not meet the conditions of the American-government-mandated, restricted REVLIMID REMS® program.

29. The Centralux Defendants' distribution, without authorization, of lenalidomide represents serious health and safety, and consumer protection issues.

30. At least one of the Infringing Websites also uses the REVLIMID mark as a keyword on the website.

6

31. By utilizing the search function at the Infringing Websites, a consumer can search for the term "REVLIMID" and correspondingly purchase unauthorized and unregulated lenalidomide.

32. The orders for lenalidomide placed, processed and completed by the Centralux Defendants, and the lenalidomide drug offered for sale via the Infringing Website, are not manufactured by Celgene, and no association or relationship exists between Celgene and the Centralux Defendants. The Infringing Websites provide that the manufacturer for the unauthorized lenalidomide drug sold by the Centralux Defendants is Natco Pharma Limited.

33. The Centralux Defendants' unauthorized use of the REVLIMID and REV marks deceives the consumer into believing that they are purchasing genuine Celgene drugs or drugs that are sponsored or endorsed by, or associated or affiliated with, Celgene, when that is not the case.

34. The Centralux Defendants' unauthorized use of the REVLIMID and REV marks falsely suggests the existence of an association or sponsorship relationship with Celgene.

35. The Centralux Defendants' use of the REVLIMID and REV marks will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the Centralux Defendants' unauthorized lenalidomide.

36. Given the restricted distribution limitations provided in connection with the REVLIMID® drug and the serious health and safety issues inherent in taking the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

37. The Centralux Defendants' continued use of the REVLIMID and REV marks is undermining Celgene's brand identity and the positive public perception of Celgene's

REVLIMID® drug. Celgene's goodwill is extremely valuable to Celgene, and the Centralux Defendants' continued unauthorized use of REVLIMID and REV is harming Celgene.

38. The Centralux Defendants have not received authorization, or obtained a license, from Celgene to use any of Celgene's trademarks. Similarly, Celgene has not acquiesced to the Centralux Defendants' use of the REVLIMID® or REV® marks.

39. Since May of 2017, Celgene has requested that Mr. Kipen and, implicitly by extension, Centralux, among other things, cease and desist from infringing Celgene's REVLIMID® mark and cease the unauthorized distribution of the Centralux Defendants' lenalidomide drug.

40. Despite receiving notice of their infringing activities, the Centralux Defendants, via the Infringing Websites, continue to willfully use the REVLIMID mark and continue to distribute lenalidomide without authorization using the REVLIMID mark. The most recent shipment of the Revlimid drug into the State of New Jersey occurred via purchase made via the safemedsrx.com website in August of 2017.

41. The Centralux Defendants' activities are likely to cause confusion or mistake among prospective consumers, are likely to dilute Celgene's REVLIMID® and REV® marks, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the lenalidomide sold at the Infringing Websites.

42. The Centralux Defendants' unauthorized use of Celgene's REVLIMID® and REV® marks constitutes unfair competition.

43. The Centralux Defendants' unauthorized distribution of lenalidomide in conjunction with Celgene's REVLIMID® and REV® marks constitutes unfair competition.

8

44. The Centralux Defendants' unauthorized distribution of lenalidomide results in serious health and safety issues directly related to Celgene's REVLIMID® drug that will irreparably damage the goodwill inherent in Celgene's REVLIMID® and REV® marks.

### COUNT I – TRADEMARK INFRINGEMENT

45. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

46. The federal registrations of Celgene's REVLIMID® and REV® marks evidences Celgene's exclusive right to use its REVLIMID® and REV® marks in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

47. The federal registrations for Celgene's REVLIMID® and REV® marks conclusively evidence the validity of the registered marks, Celgene's ownership of marks, and Celgene's exclusive right to use the REVLIMID® and REV® marks in commerce. 15 U.S.C. §§ 1065, 1115.

48. The Centralux Defendants' utilize, without authorization, the REVLIMID and REV marks in connection with the unauthorized sale of lenalidomide.

49. The Centralux Defendants' use of REVLIMID and REV is identical in sound, meaning, commercial impression, and appearance to Celgene's REVLIMID® and REV® marks. The marks create the same commercial impression and are confusingly similar.

50. The Centralux Defendants' lenalidomide product is a cytokine inhibitory drug and/or a pharmaceutical preparation that modulates the immune system.

51. The Centralux Defendants are marketing and distributing lenalidomide using the names REVLIMID and REV to consumers in the United States. The most recent shipment of the

9

Revlimid drug into the State of New Jersey occurred via purchase made via the safemedsrx.com website in August of 2017.

52. The Centralux Defendants' adoption and use of the REVLIMID and REV marks in connection with the sale of lenalidomide is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene, Celgene's REVLIMID® or REV® marks, and/or Celgene's REVLIMID® drug, in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

53. This unauthorized use of REVLIMID and REV by the Centralux Defendants constitutes infringement of Celgene's registered REVLIMID® and REV® marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

54. The activities of the Centralux Defendants complained of herein constitute willful and intentional infringement of Celgene's federally registered REVLIMID® and REV® marks, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the Centralux Defendants' knowledge that the use of Celgene's REVLIMID® and REV® marks was and is in contravention of Celgene's rights.

55. Celgene has not given the Centralux Defendants consent directly or indirectly to use the REVLIMID® or REV® marks, or any mark similar thereto.

56. The Centralux Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its REVLIMID® and REV® marks and in its business, reputation, and goodwill.

57. Celgene's damages from the aforesaid unlawful actions of the Centralux Defendants, to the extent ascertainable, have not yet been determined.

58. Celgene seeks attorney's fees and costs given the willful conduct of the Centralux Defendants.

59. Celgene seeks treble damages given the willful conduct of the Centralux Defendants.

## COUNT II – FEDERAL UNFAIR COMPETITION

60. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

61. Celgene's REVLIMID® and REV® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

62. The Centralux Defendants utilize, without authorization, the marks REVLIMID and REV in connection with the unauthorized sale of lenalidomide.

63. The lenalidomide drug offered for sale by the Centralux Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Centralux Defendants.

64. Given the restricted distribution limitations provided in connection with the REVLIMID® drug and the serious health and safety issues inherent in taking the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

65. Celgene has not given consent directly or indirectly to the Centralux Defendants to use its REVLIMID® or REV® marks, or any mark similar thereto.

66. The Centralux Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

67. The Centralux Defendants have unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling

11

lenalidomide under the designations REVLIMID and REV and by selling lenalidomide outside the restricted distribution program and in violation of required health and safety guidelines. These unauthorized actions by the Centralux Defendants constitutes unfair competition to the substantial and irreparable injury of the public and of Celgene's REVLIMID® and REV® marks, business reputation, and goodwill. 15 U.S.C. § 1125.

68. The activities of the Centralux Defendants complained of herein constitute willful and intentional tort, in derogation of Celgene's rights. Acts of unfair competition commenced and have continued in spite of the Centralux Defendants' knowledge that the use of Celgene's REVLIMID® and REV® marks was and is in contravention of Celgene's rights.

69. The Centralux Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its REVLIMID® and REV® marks and in its business, reputation, and goodwill.

70. Celgene's damages from the aforesaid unlawful actions of the Centralux Defendants, to the extent ascertainable, have not yet been determined.

71. Celgene seeks attorney's fees and costs given the willful conduct of the Centralux Defendants.

72. Celgene seeks treble damages given the willful conduct of the Centralux Defendants.

### COUNT III – FALSE DESIGNATION OF ORIGIN

73. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

74. This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq*.

75. Celgene's REVLIMID® and REV® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

76. The Centralux Defendants utilize, without authorization, the marks REVLIMID and REV in connection with the advertising, promotion, marketing, offering for sale, and sale of unauthorized lenalidomide.

77. The lenalidomide drug offered for sale by the Centralux Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Centralux Defendants.

78. Given the restricted distribution limitations provided in connection with the REVLIMID® drug and the serious health and safety issues inherent in taking the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

79. Celgene has not given the Centralux Defendants consent directly or indirectly to use its REVLIMID® or REV® marks, or any marks similar thereto.

80. The Centralux Defendants' adoption and use of the REVLIMID and REV marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Centralux Defendants with Celgene, Celgene's REVLIMID® or REV® marks, and/or Celgene's REVLIMID® drug, and Celgene is likely to be damaged by such actions. Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

81. The Centralux Defendants have caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designations REV and REVLIMID and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

82. The Centralux Defendants had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and goodwill developed through Celgene in its REVLIMID® and REV® marks.

83. These actions of the Centralux Defendants are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the Centralux Defendants and the unauthorized lenalidomide offered for sale by the Centralux Defendants in violation of 15 U.S.C. § 1125(a).

84. The aforementioned activities by the Centralux Defendants constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

85. The Centralux Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

86. Celgene's damages from the aforesaid unlawful actions of the Centralux Defendants, to the extent ascertainable, have not yet been determined.

87. Celgene seeks attorney's fees and costs given the willful conduct of the Centralux Defendants.

88. Celgene seeks treble damages given the willful conduct of the Centralux Defendants.

**COUNT IV -- DILUTION**

89. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

90. This cause of action is for dilution pursuant to 15 U.S.C. § 1125(c).

91. Celgene's REVLIMID® and REV® marks are distinctive.

92. Through Celgene's longstanding use of its REVLIMID® and REV® marks in connection with its drugs and prominently displayed in its promotional literature, and through the significant amount, volume and geographic extent of Celgene's sales of its REVLIMID® drug, Celgene's REVLIMID® and REV® marks are famous.

93. The Centralux Defendants' utilize, without authorization, the marks REVLIMID and REV in connection with the unauthorized sale of lenalidomide.

94. The lenalidomide offered for sale by the Centralux Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Centralux Defendants.

95. Given the restricted distribution limitations provided in connection with the REVLIMID® drug, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

96. Consumers are likely to associate Celgene's REVLIMID® and REV® marks, and Celgene's REVLIMID® drug, with the lenalidomide the Centralux Defendants advertise, market, promote, offer for sale, and sell under the REVLIMID and REV marks. Thus, the Centralux Defendants' actions complaint of herein constitute dilution by blurring.

97. The Centralux Defendants' actions complained of herein dilute by tarnishment Celgene's REVLIMID® and REV® marks, as the Centralux Defendants' sale and distribution of lenalidomide under the REVLIMID and REV marks fails to comply with the REVLIMID REMS® restricted distribution program, thereby adversely affecting the health and safety of consumers of the Centralux Defendants' lenalidomide and tarnishing Celgene's goodwill in its REVLIMID® and REV® marks.

98. The Centralux Defendants' adoption and use of the REVLIMID and REV marks is likely to cause dilution by blurring and dilution by tarnishment of Celgene's REVLIMID® and REV® marks. Accordingly, such conduct violates 15 U.S.C. § 1125(c).

99. The Centralux Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

100. Celgene's damages from the aforesaid unlawful actions of the Centralux Defendants, to the extent ascertainable, have not yet been determined.

**COUNT V – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

101. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

102. The Centralux Defendants have practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designations REV and REVLIMID and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

103. The Centralux Defendants' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

104. Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large. The most recent shipment of the Revlimid drug into the State of New Jersey occurred via purchase made via the safemedsrx.com website in August of 2017.

105. These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology. These

actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

106.   Celgene is without an adequate remedy at law.

107.   Celgene is entitled to an injunction restraining the Centralux Defendants, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

108.   Celgene is entitled to recover from the Centralux Defendants the damages sustained by it as a result of the Centralux Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time.

109.   Celgene is further entitled to recover from the Centralux Defendants the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the Centralux Defendants have obtained such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

110.   The conduct of the Centralux Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the Centralux Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against the Centralux Defendants as follows:

(1)   That the Court preliminary and permanently enjoin and restrain the Centralux Defendants, their officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

      (a)    infringing, inducing or contributing to the infringement of Celgene's intellectual property;

      (b)    engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID® and/or REV® marks;

      (c)    using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

      (d)    using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID® and/or REV® marks; and

      (e)    otherwise competing unfairly with Celgene.

(2)    That the Court find that the Centralux Defendants are infringing Celgene's REVLIMID® and REV® marks, are diluting Celgene's REVLIMID® and REV® marks, are falsely designating the origin of their goods, and are competing unfairly with Celgene.

(3)    That the Court Order the Centralux Defendants to deliver up to Celgene for destruction, at the Centralux Defendants' sole cost and expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the public in the possession or under the control of the Centralux Defendants, and any other material or any representations that are or may contain designations similar to the REVLIMID® and/or REV® marks.

(4)    That the Court Order the Centralux Defendants to account for and pay to Celgene the damages to which Celgene is entitled as a consequence of the infringement.

(5)    That the Court Order the Centralux Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Centralux Defendants' unfair competition.

(6) That the Court Order the Centralux Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Centralux Defendants' false designation of origin.

(7) That the Court Order the Centralux Defendants to account for and pay over to Celgene all profits received by the Centralux Defendants from their unlawful acts, and for their deceptive trade practices, in an amount consisting of the gains, profits, and advantages the Centralux Defendants have obtained as a result of their wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(8) That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of the Centralux Defendants so as to prevent fraud on the Court and so as to ensure the capacity of the Centralux Defendants to pay, and the prompt payment of, any judgment entered against the Centralux Defendants in this action.

(9) That the Court award Celgene its compensatory, incidental, and consequential damages.

(10) That the Court award Celgene enhanced, treble, and/or punitive damages.

(11) That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(12) That the Court grant Celgene such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Celgene demands a trial by jury on all triable issues of fact.

Dated: September 5, 2017

Respectfully submitted by:

COZEN O'CONNOR

/s/ Melanie A. Miller
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*