**CELGENE CORPORATION,**

*Plaintiff,*

v.

**CENTRALUX LTD., et al.**

*Defendants.*

Civil Action No. 17-6775

**ORDER**

**THIS MATTER** comes before the Court upon application by Plaintiff Celgene Corporation's ("Plaintiff" or "Celgene") renewed Motion for Default Judgement against Defendants Centralux, Ltd. ("Centralux") and Ruslan Kipen ("Kipen," or, together with Centralux, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b), ECF No. 18;

and it appearing that this action arises out of Defendants' use of Plaintiff's trademarks on REVLIMID®, a pharmaceutical which uses lenalidomide to fight abnormal bone marrow cells, Compl. ¶ 12, ECF No. 1;

and it appearing that REVLIMID is an FDA-approved immunomodulatory agent, which is used to treat several types of cancer, and has been a significant commercial success for Celgene, id. ¶¶ 12, 20;

and it appearing that while REVLIMID is currently available in the United States, it is operating under a restricted distribution program called REVLIMID REMS® because of the potential toxicity of the drug, id. ¶ 14;

and it appearing that because of this restriction, only registered physicians and pharmacists are permitted to prescribe and dispense REVELIMID to assure safe use of the drug, id.;

and it appearing that Plaintiff owns five registered trademarks in connection with this drug: four registrations for REVLIMID, and one for REV (the "Marks"), id. ¶¶ 15-17;

and it appearing that Centralux is a company located in Nicosia, Cyprus and Kipen is an individual who is believed to reside in Russia, id. ¶¶ 2, 4;

and it appearing that Defendants advertise, market, promote, and sell generic, unauthorized, and unregulated lenalidomide to consumers bearing the marks "REVLIMID" and "REV" on their websites safemedsrx.com, saferxmeds.com, helpfultabs.com, and healthpillsonline.com (the "Infringing Websites"), id. ¶¶ 3-5;

and it appearing that Kipen is the registrant of record for the Infringing Websites, id. ¶ 5

and it appearing that Defendants sell and ship unauthorized lenalidomide throughout the United States, including to New Jersey, id. ¶¶ 10, 40;[1]

and it appearing that Plaintiff brings five causes of action against Defendants: (1) federal trademark infringement, 15 U.S.C. § 1051 et seq., Compl. ¶¶ 45-59; (2) federal unfair competition, 15 U.S.C. § 1125 et seq., Compl. ¶¶ 60-72; (3) federal false designation of origin, 15 U.S.C. § 1125 et seq., Compl. ¶¶ 73-88; (4) federal trademark dilution, 15 U.S.C. § 1125(c), Compl. ¶¶ 89-100; and (5) violation of New Jersey Consumer Fraud Act, ("CFA"),[2] N.J.S.A. § 56:8-2, Compl. ¶¶ 101-110;

and it appearing that default may only be entered against a properly served Defendant, see Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008);

---

[1] For example, Plaintiff alleges that Defendants shipped unauthorized lenalidomide to New Jersey in August 2017 in connection with a purchase made on the safemedsrx.com website. Compl. ¶ 10.

[2] In its Complaint, Plaintiff refers to this count as a violation of the "New Jersey Deceptive Trade Practices Act." However, Plaintiff cites to N.J.S.A. § 56:8-2, which prohibits "fraud . . . in connection with the sale or advertisement of any merchandise." Such a claim "is actionable under the New Jersey Consumer Fraud Act." See Celgene Corp. v. Distinct Pharma, No. 17-5303, 2019 WL 1220320, at *1 n.1 (D.N.J. Mar. 13, 2019). As such, the Court will treat this claim as being brought under the CFA. Id.

and it appearing that "[s]ervice of process must satisfy both the statute under which service is effectuated and constitutional due process," and that when the defendants reside abroad, as is alleged here, "the statutory prong is governed principally by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters," <u>Distinct Pharma</u>, 2019 WL 1220320, at *3;

and it appearing that "Article 15 of the Hague Convention permits a default judgment based on service of a foreign defendant as long as: '(a) the document was served by a method prescribed by the internal law of the state addressed for the service of documents in domestic actions upon persons who are within its territory, or (b) the document was actually delivered by the defendant or to his residence by another method provided by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend,'" <u>id.</u> at *3-4 (quoting <u>Convention Done at The Hague Nov. 15, 1965</u>, art. 15, 20 U.S.T. 361 (the "Hague Convention"));

and it appearing that on February 27, 2018, Plaintiff filed a motion for service by alternative means, specifically by e-mail, because Plaintiff could not locate either Defendant's physical address, <u>see</u> ECF Nos. 7, 7.1;

and it appearing that on July 11, 2018, Magistrate Judge Steven Mannion granted Plaintiff's motion for service by alternative means, ECF No. 12;

and it appearing that Plaintiff served Defendants via e-mail on July 20, 2018, <u>see</u> ECF No. 15;

and it appearing that service via e-mail must be both statutorily and constitutionally proper in that it does not violate any international agreement, and must be reasonably calculated to provide

actual notice to the Defendants, see SEC v. Dubovoy, No. 15-6076, 2016 WL 7217607, at *2-3, (D.N.J. Dec. 13, 2016);

and it appearing that the email service statutorily complies with the requirements outlined within the Hague Convention in that the Hague Convention does "not apply where the address of the person to be served is not known," Hague Convention, Art. 1; see also Bravetti v. Liu, No. 12-7492, 2013 WL 6501740, at *4 (D.N.J. Dec. 11, 2013); Amirit Techs., Inc. v. HTN Wireless, Inc., No. 17-67, 2017 WL 2080418, at *3-4 (D.N.J. May 12, 2017);

and it appearing that service of process was effective here because Plaintiff did not receive a notice that the email was returned as undeliverable, see Celgene Corp. v. Blanche Ltd., No. 16-501, 2017 WL 1282200, at *3 (D.N.J. Mar. 10, 2017);

and it appearing that Plaintiff here took several steps to locate the address of Defendants, see ECF No. 7.1 at 2-4 (describing numerous steps Plaintiff took to locate and attempt to serve Defendants);

and it appearing that the only reasonable way in which to provide actual notice to Defendants was via email, and that Plaintiff obtained proper consent from the Court to do so, see ECF No. 12;

and it appearing that the foregoing establishes that the email service comports with both the Hague Convention and the constitutional requirements of due process, because it was reasonably calculated to provide actual notice to the Defendants, see Dubovoy, 2016 WL 7217607, at *3;

and it appearing that before entering a default judgment the Court must: (1) determine it has jurisdiction over the subject matter and parties; (2) analyze the complaint to determine whether

it sufficiently pleads a cause of action; and (3) determine whether the plaintiff has proved damages, Chanel, 558 F. Supp. 2d at 535-36;

and it appearing that the Court has subject matter jurisdiction because this action involves questions of federal trademark law, see 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1331;

and it appearing that the Court has personal jurisdiction over both Centralux and Kipen because they have purposefully directed their activities at New Jersey through sales of unauthorized and unregulated drugs to New Jersey consumers on the Infringing Websites, see Compl. ¶¶ 10, 40; Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945);

and it appearing that, before entering default judgment, the Court must also determine whether Plaintiff's Complaint sufficiently pleads a cause of action and whether Plaintiff has proved damages, Chanel, 558 F. Supp. 2d at 536, 538;

and it appearing that federal trademark infringement and unfair competition claims are assessed under identical standards under the Lanham Act, see 15 U.S.C. § 1125(a)(1); 15 U.S.C. § 1114(1); see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000);

and it appearing that in order to plead federal trademark infringement and unfair competition claims, Plaintiff must show: (1) the existence of a valid and legally protectable mark; (2) ownership of the mark; and (3) that the defendant's use of the mark to identify goods or services causes a likelihood of confusion concerning the origin of those goods or services, A & H Sportswear, 237 F.3d at 210;

and it appearing that validity and ownership are satisfied when a federally registered mark has become incontestable, see Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000);

and it appearing that to establish incontestability, the mark's owner must establish that the mark has been registered and in continuous use for five consecutive years and that there has been no adverse decision concerning the registrant's ownership or right to registration, <u>see</u> <u>Chanel</u>, 558 F. Supp. 2d at 536;

and it appearing that Plaintiff has sufficiently pled that the Marks are incontestable, <u>see</u> Compl. ¶¶ 16-19;

and it appearing that Plaintiff has also sufficiently pled that confusion between its products and Defendants' products is likely, because Defendants' drugs contain the same active ingredient and bear marks that are identical in "sound, meaning, commercial impression, and appearance" to the Marks, <u>see</u> Compl. ¶¶ 30, 49;

and it appearing that Plaintiff has therefore stated a claim for federal trademark infringement and unfair competition;

and it appearing that because a federal false designation of origin claim is measured by identical standards as federal trademark infringement, Plaintiff has also stated a claim for false designation of origin, <u>see</u> <u>Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1443-44 (3d Cir. 1994)

and it appearing that in order to state a claim for federal trademark dilution, a plaintiff must demonstrate that: (1) the plaintiff is the owner of a mark that qualifies as a famous based on the factors listed in § 1125(c)(1); (2) "defendant is making commercial use in interstate commerce of a mark or trade name"; (3) "[d]efendant's use began after the plaintiff's mark became famous"; and (4) "defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify

and distinguish goods or services," <u>Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.</u>, 212 F.3d 157, 163 (3d Cir. 2000);[3]

and it appearing that the Marks are famous because of their distinctive nature, the significant commercial success of the REVLEMID and REV products, and the extent of Plaintiff's advertising activities under the Marks, <u>see</u> Compl. ¶¶ 19-22, 92;

and it appearing that Defendants have made commercial use of the Marks in interstate commerce, <u>see</u> <u>id.</u> ¶¶ 25-26;

and it appearing that Defendants' use of the Marks began after the Marks became famous, <u>id.</u> ¶¶ 21-23, 26-40;

and it appearing that that Defendants' use of the Marks causes dilution because consumers can search "REVLIMID" or "REV" on the Infringing Websites and subsequently purchase unauthorized and unregulated lenalidomide, leading to consumer confusion and potential harm to their health and safety, <u>id.</u> ¶¶ 30-31, 97;

and it appearing that Plaintiff has therefore stated a claim for federal trademark dilution;

and it appearing that in order to state a claim under the CFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss," <u>Slimm v. Bank of Am. Corp.</u>, No. 12-5846, 2013 WL 1867035, at *13 (D.N.J. May 2, 2013) (citation omitted); <u>see also</u> <u>D'Agostino v. Maldonado</u>, 216 N.J. 168, 184 (2013);

---

[3] A famous mark is one "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is famous, courts consider, <u>inter</u> <u>alia</u>, the "duration, extent, and geographic reach of advertising and publicity of the mark," "the amount, volume, and geographic extent of sales of goods or services offered under the mark," and "the extent of actual recognition of the mark." <u>Id.</u>

and it appearing that the Defendants engaged in unlawful conduct by selling lenalidomide using the Marks "in violation of required health and safety guidelines," Compl. ¶ 102;

and it appearing that Plaintiff suffered an ascertainable loss, since consumers purchased lenalidomide products from the Infringing Websites rather than from Plaintiff, id. ¶ 40;

and it appearing that the causal link is satisfied because but-for Defendants and the Infringing Websites, consumers in search of lenalidomide products would have obtained them from Plaintiff;

and it appearing that Plaintiff has therefore stated a claim under the CFA;

and it appearing that before granting default, the Court must also make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default, Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008);

and it appearing that Defendants do not have a meritorious defense, see Rose Containerline, Inc. v. Omega Shipping Co., No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011);

and it appearing that Plaintiff will suffer prejudice in the form of economic and reputational harm if no action is taken;

and it appearing that Defendants have acted culpably in failing to respond to this lawsuit, given that they have been served with the Complaint and are not infants or otherwise incompetent, see Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006);

and it appearing that entry of default is therefore proper;

and it appearing that Plaintiff seeks a permanent injunction, which requires the Court to consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will not result in even greater harm to the non-moving party; and (4) the injunction would be in the public interest, Gucci Am., Inc. v. Daffy's, Inc., 354 F.3d 228, 247 (3d Cir. 2003) (citing Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001);

and it appearing that Plaintiff has demonstrated success on the merits of their federal trademark and New Jersey CFA claims discussed supra;

and it appearing that Plaintiff would be irreparably damaged in the form of continued reputational and economic harm if no action is taken;

and it appearing that a permanent injunction would not result in any greater harm to Defendants, who are intentionally infringing upon Plaintiff's Marks;

and it appearing that a permanent injunction would protect the public interest, since the continued distribution of the Defendants' infringing products will cause consumer confusion and could result in serious health, safety, and consumer protection concerns;

and it appearing that entry of a permanent injunction is therefore proper;

**IT IS** on this 12th day of March, 2020

**ORDERED** that Plaintiff's motion for default judgment, ECF No. 18, is **GRANTED**; and it is further

**ORDERED** that Defendants, their officers, directors, agent, employees, and all persons in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, are hereby permanently and forever enjoined, from the date hereof, from doing, abiding, causing, or abetting any of the following:

(a) engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID and REV marks;

(b) using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID and REV marks;

(c) marketing, offering for sale, and selling lenalidomide under the designation REVLIMID or REV, or any confusingly similar variation thereof, or otherwise, into the United States; and

(d) selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

/s Madeline Cox Arleo
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE